**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Becky Lynn Kantner, | No. CIV 08-625-TUC-JMR (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Michael Astrue, Commissioner of Social Security, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on June 23, 2009. [doc. # 13] The defendant filed an answering brief on September 21, 2009.

The Magistrate Judge recommends that the District Court, after its independent review, deny the plaintiff's motion for summary judgment. The Commissioner's decision is supported by substantial evidence and is free from legal error.

PROCEDURAL HISTORY

On July 18, 2005, Kantner constructively filed an application for disability insurance benefits. (Tr. 114, 186). She alleged disability beginning on May 2, 2005, due to degenerative

disk disease, arthritis, and heart problems. (Tr. 114, 117, 179, 186). She also reported numbness in her extremities and "emotional issues." (Tr. 179-80). Her claim was denied initially (Tr. 90-92) and upon reconsideration. (Tr. 85-87). Kantner requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal on February 15, 2007. (Tr. 22, 29, 79). In his decision, dated May 22, 2007, the ALJ found Kantner was not disabled. (Tr. 22-29). Kantner appealed and submitted additional evidence, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 3-5, 6, 13, 18); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Kantner subsequently filed the instant complaint appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). She filed the instant motion for summary judgment on June 23, 2009. [doc. # 13] The Commissioner filed an answering brief on September 21, 2009.

Claimant's Work History and Medical History

At the time of the hearing, Kantner was 48 years old. (Tr. 39). She completed 12 years of schooling and has a GED. (Tr. 39). From 1998 to 2005, Kantner worked as a security manager. (Tr. 180).

Kantner has a history of degenerative spine disease with intermittent numbness of the extremities. (Tr. 353). Beginning in 2003, Kantner suffered a series of traumas that exacerbated her physical symptoms and triggered psychological illness. (Tr. 469). In 2003, her 19-year-old daughter died from an infection exacerbated by leukemia. (Tr. 469). Around the same time, her husband was incarcerated for extreme DUI. (Tr. 469).

Kantner claims a disability onset date of May 2, 2005. (Tr. 22). At around this time, she took time off from work "to help her neck and back [get] better." (Tr. 319). She returned to work briefly but never returned to full time work. (Tr. 154, 157, 160).

On May 16, 2005, Kantner was sexually assaulted by a stranger, which exacerbated her neck pain. (Tr. 319). Her mother died in June of 2005. (Tr. 469).

Kantner's last insured date is December 31, 2010. (Tr. 22). To be eligible for benefits, she must establish a disability onset on or before this date. (Tr. 22).

The relevant medical record begins in April of 2005 when Kantner was examined by Scott J. Biehler, D.O. (Tr. 313). Kantner complained of pain in her "mid to lower neck and upper thoracic to mid thoracic area of her back." (Tr. 313). Biehler noted that "[h]er bilateral arms are numb on the lateral aspect." (Tr. 313). "Her hands ache to grasp, but not at rest." (Tr. 313).

On May 18, 2005, Kantner reported she had "taken last week off to help get her neck and back better." (Tr. 319). The treatment notes indicate her condition had been "improving somewhat," but "(s)he was physically assaulted Monday night at her apartment complex while she was sitting by the pool." (Tr. 319). "Her neck was grabbed and jerked, and she has a bruise on her back and left shoulder." (Tr. 319). "Since she was traumatized, she has had increased paresthesia in both of her arms with the right cheek that is numb at times." (Tr. 319).

In June of 2005, Kantner was hospitalized for nine days. (Tr. 324). She was diagnosed with (1) abdominal pain, nausea vomiting, likely viral infection, (2) history of peptic ulcer disease, (3) history of cardiac arrhythmia, stable, (4) neuropathy, undetermined cause, and (5) temporal area cysts. (Tr. 324). An MRI revealed "spinal stenosis and disk problems." (Tr. 324-25). Douglas Kirkpatrick, D.O., noted that "[t]he cause of her neurological symptoms are not clear to me." (Tr. 325). "Neurosurgery and neurology felt they were not consistent with any cervical spine findings." (Tr. 325).

Kurt Schroeder, M.D., examined Kantner at the time of her hospitalization. (Tr. 333). Kantner complained of "weakness of upper and lower extremities and pain shooting down both of her lower extremities and variable numbness that comes and goes in the arms and legs." (Tr. 333). Schroeder found Kantner to be "not the best historian" in part because she denied ever having had an MRI before although she had had one during a previous neurological work up conducted by one of Schroeder's partners. (Tr. 333). Schroeder reported that her condition was being treated "conservatively" although, for some reason, she had been giving the medical staff the incorrect impression that she was scheduled for surgery. (Tr. 333).

1 Schroeder noted that Kantner did not report her sexual assault to the police because "she
2 did not want hassle and just wanted to get on with her life." (Tr. 372-73). He also noted that
3 Kantner's account of her sexual assault given to him was different from the account she gave
4 to Dr. Biehler. (Tr. 334).

5 Later in June of 2005, Kantner was examined by a neurologist, Francisco R. Valdivia,
6 M.D. (Tr. 336). He noted "MRI of total spine shows C5-6 severe canal stenosis with cord
7 compromise" and "C6-7 canal stenosis." (Tr. 338). He assessed Kantner as "[a] 46-year old
8 woman with vague complaints of numbness and weakness with no clinical correlation on
9 examination." (Tr. 338). "Differential diagnosis includes multiple sclerosis, neuropathy,
10 psychiatric overlay, or some combination of the above." (Tr. 338). Valdivia further noted that
11 "[b]ased on reports in the chart and my history, the patient is an inconsistent historian." (Tr.
12 338).

13 In September of 2005, Kantner was examined by psychologist, Noelle Rohen, Ph.D., for
14 the Arizona DES Disability Determination Services. (Tr. 300). Kantner reported poor sleep,
15 daytime fatigue, and depressed mood. (Tr. 300). She reported a history of panic attacks that
16 were fairly well controlled with medication. (Tr. 300). Since the sexual assault, she had been
17 "avoiding men altogether" and "experiencing nightmares and flashbacks regularly." (Tr. 300).
18 Nevertheless, Kantner maintained "it is primarily her physical concerns that keep her from
19 working" – fatigue and mobility limitations. (Tr. 300).

20 Rohen offered the following diagnoses: "Axis I: Post Traumatic Stress Disorder, R/O
21 Major Depressive Disorder, Single Episode, Moderate; Axis II: No Diagnosis; Axis III:
22 Multiple; defer to medical records." (Tr. 302) (medical codes omitted). She noted that
23 "[Kantner] insists that emotional concerns . . . are not keeping her from employment." (Tr.
24 302). She concluded "Given claimant's apparent drive to succeed and expressed desire to return
25 to work, writer is inclined to agree with her self-assessment." (Tr. 302-03).

26 Rohen completed a Medical Source Statement of Ability to do Work Related Activities
27 (Mental). (Tr. 304). She concluded Kantner's mental condition will not create any work
28 impairment lasting 12 months. (Tr. 304).

- 4 -

In October 2005, a non-examining state agency psychologist, Alan L. Goldberg, Psy.D., reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 286-99). He assessed two areas of impairment: affective disorder and anxiety disorder. He opined that Kantner suffered from a depressive disorder NOS and anxiety evidenced by "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." (Tr. 298, 291). He evaluated Kantner's functional limitations and found Kantner had mild "difficulties in maintaining social functioning." (Tr. 296). He concluded Kantner's impairments were "non-severe by Social Security standards" based in part on Kantner's own statement that her ability to work is not affected by her mental condition. (Tr. 298)

Kantner was evaluated by COPE behavioral services in February of 2006. (Tr. 469-70). Saul Perea, M.D., gave the following diagnosis: "Axis I Post traumatic stress disorder, Major depressive disorder, recurrent, without psychotic features, Anxiety disorder NOS Rule out social anxiety . . . ; Axis IV Severe psycho social stressors including grief and loss, trauma and rape, poor interpersonal relationships, current separation from her third husband; Axis V GAF 65, last year 55." (Tr. 470). Kantner's treatment plan included Paxil, Seroquel, and Restoril for depression, anxiety, PTSD, and insomnia. (Tr. 470).

In March of 2006, a non-examining state agency physician, Fernando Gonzales-Portillo, M.D., reviewed the medical records and completed a Physical Residual Functional Capacity Assessment form. (Tr. 67, 191-98). He found Kantner could lift 20 pounds occasionally and 10 pounds frequently. *Id.* She could stand and/or walk for a total of about 6 hours in an 8-hour workday. *Id.* She could sit for a total of about 6 hours in an 8-hour workday. *Id.* She could only occasionally crouch; crawl; or climb ladders, rope, or scaffolds. Id.

Also in March of 2006, Kantner was examined by psychologist, James Rau, Ph.D., for the Arizona DES Disability Determination Services. (Tr. 213). Rau offered the following diagnosis: "Axis I: Depressive Disorder NOS, Anxiety disorder NOS; Axis II: None; Axis III: Cardiac problems, chronic pain, and other problems as well." (Tr. 216). Rau completed a Medical Source Statement of Ability to do Work Related Activities (Mental). (Tr. 217). He found Kantner markedly limited in her "ability to work in coordination with or proximity to

others without being distracted by them," her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 219-20). She was moderately limited in a number of areas including memory, concentration, and the ability to interact with other people. (Tr. 217-19). Rau was, however, "not sure" if her limitations would last for 12 months. (Tr. 217).

In April of 2006, a non-examining state agency psychiatrist, Hubert R. Estes, M.D., reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 199-212). He assessed non-severe impairments: affective disorder and anxiety related disorder. *Id.* He opined Kantner was mildly limited in her "restriction of activities of daily living," "difficulties in maintaining social functioning," and "difficulties in maintaining concentration, persistence, or pace." *Id.*

In May of 2006, Perea from COPE Behavioral Services reported Kantner was "doing well, less depressed or anxious." (Tr. 464). She reported instead "severe fatigue and lack of will." (Tr. 464). Kantner reported that she was "dating a man" and was "very happy about it." (Tr. 464).

In June of 2006, William H. Clark, M.D., summarized Kantner's condition for the Arizona DES Jobs Program. (Tr. 485). He opined that Kantner was unable to work due to her degenerative disc disease, cardiac dysrythmia and emotional problems. (Tr. 485). Specifically, her physical condition limited her ability to lift, climb, balance, reach, or handle. (Tr. 485). She could stand daily for only 20 minutes and sit daily for only 20 minutes. (Tr. 485).

In July of 2006, Kantner suffered an episode in which her arm and leg began shaking while she was swimming. (Tr. 504). She did not lose consciousness but she experienced confusion before the convulsions. *Id.*

In October of 2006, Perea reported the Kantner was "not doing well." (Tr. 456). She was "very depressed" with "low motivation." (Tr. 456). "She feels fatigue all the time." (Tr. 456).

On February 15, 2007, Kantner appeared with counsel at a hearing before ALJ Milan Dostal. (Tr. 41). She reported she has pain in her spine and numbness in her extremities. (Tr. 44). She stands and walks with the aid of a cane. (Tr. 45). During the day, she cares for her eleven year old son and does the housework. (Tr. 46). She does not, however, perform tasks that require lifting. (Tr. 47).

Kathleen McGelten testified at the hearing as a vocational expert. (Tr. 59). She opined that a person who could lift and carry 10 pounds frequently and 20 pounds occasionally, who had functional limitations outlined by state agency physician, Fernando Gonzales-Portillo, and who had only slight mental impairment could perform Kantner's past relevant work as a security manager. (Tr. 60-62).

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the

1  claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,*
2  8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed
3  impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

## The ALJ's Findings

At step one of the disability analysis, the ALJ found Kantner "has not engaged in substantial gainful activity since May 2, 2005, the alleged onset date . . . ." (Tr. 24). At step two, he found Kantner has "the following severe combination of impairments: epilepsy/seizure disorder diagnosed in August 2006, degenerative disc disease of the cervical spine, as well as depressive and anxiety related disorders . . . ." (Tr. 24). At step three, the ALJ found Kantner's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 25). The ALJ then analyzed Kantner's residual functional capacity (RFC). (Tr. 26). He found Kantner "has the residual functional capacity to perform light level functioning except as limited by: the inability to crouch, crawl, or climb ladders, ropes, and scaffolds on more than an occasional basis, need to avoid more than concentrated exposure to hazards, as well as the inability to feel or perform fine manipulation activities with the hands on more than a frequent basis." (Tr. 26). "From a psychological standpoint, the claimant experiences nonexertional limitations consisting of

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 8 -

moderate difficulties understanding, remembering, or carrying out detailed instructions."(Tr. 26). At step four, the ALJ found Kantner could perform her past relevant work as a security guard or security department manager. (Tr. 24).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner

1  may reject that opinion only if he provides specific and legitimate reasons supported by
2  substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between
3  a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
4  disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

In this case, the ALJ adopted the opinion of the non-examining state agency physician, Fernando Gonzales-Portillo, and determined that Kantner retains the ability to perform light work with only modest limitations. The ALJ further determined that Kantner's mental impairments result in only moderate nonexertional limitations. Based on the testimony of the vocational expert, Kathleen McGelten, the ALJ concluded that Kantner could return to her past

- 10 -

relevant work as a security manager and was not disabled. He discounted Kantner's subjective testimony of disability. The ALJ's decision is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (The opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record.").

In this case, the ALJ adopted the opinion of the non-examining medical expert and rejected the contrary opinion of the treating physician, William H. Clark. Ordinarily, the opinion of a treating physician is entitled to deference, and before that opinion may be discounted, an ALJ must provide specific and legitimate reasons. Here, the ALJ explained that he was discounting Clark's opinion because it was not supported by the medical record and because of Kantner's "well documented history of lying and/or providing misleading or inaccurate information to treating and consulting sources." (Tr. 27-28).

The ALJ concedes there is evidence in the record documenting the existence of a number of Kantner's medical complaints. The evidence, however, does not support Kantner's claim that her medical impairments are disabling. For example, the medical record indicates that Kantner suffered an episode of pancreatitis, but aside from this single episode, there is no support for Kantner's claim that she suffers from chronic pancreatitis. (Tr. 28, 379). Similarly, while there is objective medical evidence of cervical spine disorder, her neurologists "are reporting generally negative findings on evaluation, and recommending that only conservative measures should be provided." (Tr. 29, 333).

The record contains a number of instances where Kantner's treatment providers commented on her lack of forthrightness. Kurt Schroeder found Kantner to be "not the best historian" in part because she denied ever having had an MRI before although she had had one during a previous neurological work up conducted by one of Schroeder's partners. (Tr. 333). He reported that, while her condition was being treated conservatively, for some reason Kantner had been giving the medical staff the incorrect impression that she was scheduled for surgery. (Tr. 333). He also noted that Kantner's account of her sexual assault was different from the

account she gave to Dr. Biehler. (Tr. 319, 334). Neurologist Francisco R. Valdivia also noted that Kantner was "an inconsistent historian." (Tr. 338).

Colin Bamford, M.D., performed a neurological examination of Kantner in April of 2006. He described Kantner's station and gait as follows: "The patient rises from a chair with a exaggerated slow movement, [w]alk is slow (with what could be interpreted as feigned unsteadiness)." (Tr. 512). He, too, apparently had some concerns that Kantner might be exaggerating the severity of her symptoms.

As the ALJ noted, there is evidence in the medical record contradicting Clark's opinion of disability. Further, there is evidence that Kantner may be exaggerating the severity of her symptoms. The ALJ provided specific and legitimate reasons for his decision to discount the opinion of disability provided by her treating physician, William H. Clark.

The ALJ further concluded that Kantner's mental impairments result in only moderate nonexertional limitations in understanding, remembering, or carrying out detailed instructions. (Tr. 26). In so doing, he relied on the opinion of the non-examining state agency psychiatrist, Hubert R. Estes and discounted the opinion of the examining psychiatrist, James Rau. (Tr. 26).

Ordinarily, the opinion of an examining physician[2] is entitled to deference, and before that opinion may be discounted, an ALJ must provide specific and legitimate reasons. Here, the ALJ explained that he was discounting Rau's opinion because his opinion of marked mental impairment is not supported by the medical record and because Rau's opinion may have been overly influenced by Kantner's condition at the time of the examination rather than being an accurate evaluation of her long term condition. The ALJ provided legally sufficient reasons for discounting Rau's opinion.

Rau himself stated that he was "not sure" that Kantner's mental impairments would last 12 months. (Tr. 217). Accordingly, it was reasonable for the ALJ to conclude that his evaluation was not representative of her long term mental condition. Moreover, as the ALJ

---

[2] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

1  noted, Kantner's records from COPE are consistent with only moderate mental impairment. *See*
2  (Tr. 26, 470, 465, 459, 456, 452) (showing GAF scores from 60 to 70)[3]. The ALJ's analysis of
3  Kantner's mental impairment was supported by substantial evidence and free from legal error.

The ALJ also discounted Kantner's subjective testimony of disability. (Tr. 27). Ordinarily, a claimant's subjective testimony may be discounted only if the ALJ provides clear and convincing reasons. Here, however, there is evidence that the claimant is either malingering or supplying misleading or inaccurate information about her medical condition. (Tr. 319, 333, 334, 338, 512). Accordingly, the ALJ was not required to accept Kantner's subjective testimony of disability.

The ALJ further noted that Kantner' record of daily activities is inconsistent with her subjective testimony of disability. He noted that she is able to "care for her son, go on trips to the doctor, grocery and book stores, socialize at the pool, visit with friends and neighbors, care for her pets, watch a movie, go out for walks, prepare meals, do housework, pay her own bills, go swimming, home school her son, do some work at a local church participate in her son's scouting activities, and go out on dates." (Tr. 28-29); (Tr. 161-66, 171-75, 464). Household activities are generally not performed with the same persistence and pace required in the workplace, but they may be considered by the ALJ in evaluating a claimant's subjective testimony of disability. *Morgan v. Apfel*, 169 F.3d, 595, 600 (9th Cir. 1999). Here, Kantner's record of daily activities is some evidence that supports the ALJ's decision to discount her subjective testimony of disability.

The ALJ's decision to discount Kantner's subjective testimony of disability was supported by substantial evidence and is free from legal error. *See Carmickle v. Commissioner*, 533 F.3d 1155 1160 (9th Cir. 2008); *Taylor v. Astrue*, __ F.Supp.2d __ , 2009 WL 3248043

---

[3] GAF: Global Assessment of Functioning Scale. 51-60: "moderate symptoms"or "moderate difficulty in social occupational or school functioning." 61-70: "some mild symptoms" or "some difficulty in social occupational, or school functions," but "generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, p.32 (1994).

(E.D.Wash. 2009) ("Because there is clear evidence of malingering, 'clear and convincing' reasoning was not required to reject Plaintiff's subjective statements.").

After evaluating the medical record, the ALJ concluded Kantner retains the RFC to perform light work with only modest limitations. Based on the testimony of the vocational expert, Kathleen McGelten, the ALJ concluded Kantner could return to her past relevant work as a security manager and was not disabled. The testimony of a vocational expert is substantial evidence supporting a conclusion that the claimant is not disabled. *See* 20 C.F.R. §404.1560(b)(2); § 416.960(b)(2). The ALJ's decision in this case is supported by substantial evidence and is free from legal error. *See, e.g., Harvey v. Barnhart*, 368 F.3d 1013, 1015 (8th Cir. 2004) (The ALJ's conclusion that claimant was not disabled was supported in part by evidence that claimant displayed "symptom magnification syndrome" and his treating physicians viewed him as not credible.).

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, deny the plaintiff's Motion for Summary Judgment. [doc. # 13]

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties. DATED this 19th day of January, 2010.

_____
Glenda E. Edmonds
United States Magistrate Judge

- 14 -